IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PAUL FREDERICK CASTO

       Petitioner,

v.                                Civil Action No. 1:07cv135
                                 Criminal Action No. 1:06cr41-01
                                 (Judge Keeley)

UNITED STATES OF AMERICA

       Respondent.

## OPINION/REPORT AND RECOMMENDATION

On October 1, 2007, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, along with a Memorandum of Support. The government filed a Response to the Motion on November 30, 2007. On January 30, 2008, petitioner filed a Reply Motion, along with a Memorandum of Support. This case is before the undersigned for a preliminary review and report and recommendation pursuant to LR PL P 83.01, et seq., and Standing Order No. 4.

**I.**     **Procedural History**

**A.**     **Conviction and Sentence**

On June 7, 2006, the petitioner signed a plea agreement by which he agreed to plead guilty to Count Four of the Indictment charging him with aiding and abetting other persons in unlawfully, knowingly and intentionally distributing approximately 1.08 grams of cocaine base, also known as "crack" within 1000 feet of Mason House in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and 860, and Title 18, United States Code, Section 2. In the plea agreement, both parties stipulated that on or about January 6, 2006, at or near

Clarksburg, Harrison County, West Virginia, the petitioner, aided and abetted by other persons, unlawfully, knowingly, and intentionally distributed approximately 1.08 grams of cocaine base within 1000 feet of the Mason House, a housing facility owned by a public housing authority, that is West Virginia Housing Authority. The parties further stipulated and agreed that the petitioner's total relevant conduct for this case was:

    1)    from the Government's perspective, at least 150 grams but less than 500 grams of cocaine base, some of which was within 1000 feet of the protected location; and

    2)    from the defendant's prospective, at least 100 grams but less than 500 grams of cocaine base, some of which was within 1000 feet of the protected location.[1]

On October 10, 2006, the petitioner was sentenced to 97 months imprisonment and supervised release for six years.

**B.** **Direct Appeal**

The petitioner did not file a direct appeal of his conviction and sentence.

**C.** **Federal Habeas Corpus**

Petitioner's Contentions

(1) Entrapment - the petitioner's conviction and sentence were a result of inducement by government to commit a crime absent predisposition of the defendant;

(2) Ineffective assistance of counsel for

    (a) failing to protect petitioner's Fifth and Sixth Amendment rights,

    (b) failing to investigate possibility of downward departure under Booker

---

[1] At the sentencing hearing, the petitioner agreed to the government's contention regarding relevant conduct.

> (c) failing to address the fact that drug amounts were for personal use and not for sale, and
>
> (d) failing to inform and review evidence with petitioner.

Government's Response

(1) The conviction and sentence were not the result of entrapment,

(2) Petitioner stipulated to the relevant conduct and drug amount in his plea agreement,

(3) The Court reviewed the petitioner's sentence using the Booker guidelines, and

(4) Petitioner's argument that he was not properly advised as to the evidence is refuted by the record.

## II. Analysis

### A. Entrapment

In Matthews v. United States, 485 U.S. 58 (1988), the Supreme Court of the United States established a two-part test for criminal defendants in establishing an affirmative defense of entrapment: 1) whether the there was inducement on the part of the government; and 2) whether the defendant showed a predisposition to commit the crime. Id. at 63. The defendant has the initial burden of presenting more than a scintilla of evidence establishing these two elements. United States v. Perl, 584 F.2d 1316, 1321 (4th Cir. 1978).

The focus of the predisposition inquiry must be on whether the defendant possessed the necessary state of mind to commit the crime when he was initially approached. United States v. Hunt, 749 F.2d 1078, 1085 (4th Cir.1984). The government's knowledge of the state of mind is irrelevant, and thus there is no requirement that the government prove that it had a reasonable

suspicion of wrongdoing before conducting an undercover investigation. United States v. DeVore, 423 F.2d 1069, 1071 (4th Cir. 1970). Therefore, if the criminal intent originates in the mind of the accused and the criminal offense is completed, the fact that a person acting as a decoy for law enforcement officials furnished the accused with the opportunity for commission of the offense, or that the accused was aided in the commission of the crime in order to secure the evidence necessary to prosecute him, constitutes no defense. Sherman v. United States, 356 U.S. 369, 372 (1958). Hence, the entrapment defenses is not available where the officers merely afforded an opportunity to one intending to violate the law. Id.

Under the available record, there is no scintilla of support for the petitioner's allegation of entrapment. In fact, the opposite is true; the record shows the petitioner, on his own accord, sold crack cocaine. First, the petitioner entered a guilty plea, thus admitting to committing all the elements of the underlying crime. McCarthy v. United States, 394 U.S. 459, 466 (1969). Second, pursuant to Federal Rules of Criminal Procedure Rule 11(b)(3), during the Rule 11 proceedings, the Court examined the factual basis for the plea. During the Rule 11 hearing, the Government was willing to call Sergeant Cook to establish the underlying facts of the crime. See Plea Transcript (dckt. 47) p. 34. Instead of calling the witness, the petitioner instead agreed to allow the stipulated facts of the plea bargain to serve as the factual basis for his conduct.[2] Id. The

---

[2] According to the transcripts, the following exchange took place:

> THE COURT: Ms. Morgan, does the Government have witness it wants to offer to establish the independent basis in fact to support the (inaudible)?
>
> MS. MORGAN: Yes, Your Honor, Sergeant Cook is here on behalf of the Government and he would be prepared to testify regarding the controlled buy that formed the basis for Count Four. However, there is a detailed factual stipulation in paragraph 9 of the plea agreement, where the

4

Court then reviewed the stipulations found in Paragraph 9, including the relevant conduct portion pertaining to the 100 to 500 grams of crack cocaine that could be attributed to the petitioner. Id. at 35. The petitioner failed to challenge any aspect of the underlying facts, as stated in the plea agreement. Hence, the record shows no sufficient ground for an entrapment defense and this claim should be denied.

**B.**     **Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief

---

> defendant is admitting the elements with respect to Count Four that the Court has just summarized. So in light of that stipulation, if he is agreeable, we would say that could serve as the factual basis for the plea.
>
> THE COURT: Mr. LeRose, do you understand what has been said by Ms. Morgan? Would it be-do you want Sergeant Cook to testify to the same facts that are set in the stipulation or do you want the stipulation to serve as the independent basis in fact?
>
> MR. LEROSE: I believe it would be quite alright to let the stipulation serve in the basis of fact.
>
> THE COURT: Mr. Casto, to you. You have a right to hear what the Government has evidence [to] or it can prove each of the essential elements of the offense that I just reviewed with you, that would come from Sergeant Cook, who monitored the controlled buy that was the question in Count Four. You could give up your right to have him provide the independent basis in fact and accept the stipulation that is contained in paragraph 9, and let that serve as the independent basis in fact in support of the proposed plea? What do you want to do?
>
> MR. CASTO: Mr. Cook does not have to testify, I accept it.

See Plea Transcript (dckt. 47) pp. 34-35.

on the ground that his counsel rendered ineffective assistance. The first prong of the test requires the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

(1) <u>Failing to protect his Fifth and Sixth Amendment rights</u>

In this ground, the petitioner simply asserts that counsel failed to protect petitioner's

6

Fifth and Sixth Amendment rights. More specifically, petitioner states that his sentence was based on 220 grams of cocaine base, although he only admitted to distributing 100 grams or less. However, petitioner's recollection of his case is imaginative, at best. As previously mentioned numerous times, in his plea agreement, defendant stipulated to a relevant conduct of between 100-500 grams of cocaine base. Again, as mentioned earlier in this report, at his Rule 11 hearing, petitioner did not object to this stipulation. Instead, he affirmatively embraced the facts stipulated in the plea, including the relevant conduct levels. Therefore, this claim is without merit and should be dismissed.

(2) <u>Failing to investigate possibility of downward departure under Booker</u>

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In June of 2004, the Supreme Court applied this ruling to the State of Washington's sentencing scheme and found that the imposition of state sentencing enhancements - based solely on factual findings by the court - violated a defendant's Sixth Amendment rights because the facts supporting the findings were neither admitted by the defendant nor found by a jury. <u>See</u> <u>Blakely v. Washington</u>, 542 U.S. 296, 301-303 (2004). In addition, the Court expressly noted that it was not considering the constitutionality of the federal sentencing guidelines. <u>Id</u>. at 305, n 9. Subsequently, however, the Supreme Court took up this issue in <u>United States v. Booker</u>, 543 U.S. 220 (2005).

In <u>Booker</u>, the Supreme Court held that <u>Blakely</u> applies to the federal sentencing guidelines, and therefore, the Sixth Amendment is violated when a district court imposes a

7

mandatory sentence under the Guidelines that is greater than the maximum authorized by the facts found by the jury alone. Booker, 543 U.S. at 243. Additionally, the Court held that two provisions of the statute creating the guidelines system must be excised to make them compatible with the Sixth Amendment, thereby rendering the guidelines advisory. Id. at 258-261.

In the present case, the petitioner's allegation that the Court did not consider additional factors other than the Sentencing Guidelines in rendering his sentencing is clearly refuted by the record. At sentencing, petitioner's counsel made a plea, asking the Court to consider downward departure characteristics under Blakely. See Sentencing Transcript (dckt. 45) p. 25. After hearing counsel's plea, the Court spends the next several pages of transcript reviewing Booker's impact on petitioner's case; the court examined the seriousness of the offense and the public's protection from further crimes. Additionally, the court examined petitioner's specific characteristics, including his work history, health and community reputation before denying any reductions. Hence, during sentencing, Booker factors, along with additional factors, were considered. Therefore, petitioner's assertion that Booker was not considered is misguided and petitioner's claim should be denied.

(3) Failing to address the fact that drug amounts were for personal use and not for sale

In this ground, petitioner argues that counsel failed to inform the Court that the drug amounts he was charged for were not for sale, but for the petitioner's own use. However, this contention does not help the petitioner's argument. According to the Fourth Circuit, "[i]ntent to distribute may be inferred from the quantity of drugs possessed." United States v. Rusher, 966 F.2d 868, 878 (4th Cir. 1992), citing United States v. Samad, 754 F.2d 1091, 1096 (4th Cir. 1984).

8

Furthermore, the Fourth Circuit went on to say:

> Intent to distribute may be inferred from possession of .... a quantity of drugs larger than needed for personal use. Possession of a small quantity of drugs by itself is an insufficient basis from which intent to distribute may be inferred.

United States v. Lamarr, 75 F.3d 964, 973 (4th Cir. 1996) quoting United States v. Fisher, 912 F.2d 728, 730 (4th Cir. 1990).

Once again, petitioner is foiled in his contention by his own plea agreement. Relevant conduct was stipulated to in Paragraph Nine of the agreement. According to that stipulation, petitioner's relevant conduct was between 150-500 grams of cocaine base, over only a four month period. Considering the stipulated relevant conduct amount, the Court was hard pressed to consider the amount small or only for "personal" use. At the sentencing hearing, the Court reviewed the pre-sentence report and concluded that the amount in question did not warrant a finding of small personal use. See Sentencing Transcript (dckt. 45) p.29. Instead, the Court concluded that the amounts in controversy were regularly characteristic of a large scale drug dealer. Id. Hence, the Court did consider the personal use argument, and found that argument to be improbable, at best. Therefore, this claim is without merit and should be dismissed.

(4) Failing to inform and review evidence with petitioner

In this claim, petitioner makes three broad contentions regarding his counsel's performance. First, the petitioner claims that his counsel never reviewed any of the evidence against him. Second, the petitioner claims that his counsel neglected to inform him that any such evidence could be presented on his behalf at any time. Third, the petitioner claims that his counsel only appeared in court once on his behalf. Again, petitioner's claims are frivolous.

9

Regarding the review of evidence claims, petitioner seems to suggest that he was prejudiced by counsel's failure to review certain evidence because that evidence was exculpatory in nature. In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court stated that "the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Evidence is deemed "material if there is a reasonable probability that, had the evidence been disclosed . . . the result of the proceeding would have been different." Strickler v. Greene, 527 U.S. 263, 280,(1999), citing United States v. Bagley, 473 U.S. 667 (1985). Furthermore, the Court went on in Strickler to note**:**

> [T]here are three components of a true Brady violation:
> The evidence at issue must be favorable to the accused,
> either because it is exculpatory, or because it is impeaching;
> that evidence must have been suppressed by the State, either
> willfully or inadvertently; and prejudice must have ensued.

Id. at 281-282.

In the present case, the record does not show that any evidence was suppressed by the United States. Furthermore, the petitioner does not point to any other evidence that may have been used in his defense, which might be exculpatory. Therefore, the first part of petitioner's contention should be denied.

Regarding the appearance claim, petitioner here also complains that his counsel failed to advise him and that counsel failed to appear in court one time. According to the record, however, petitioner's attorney was present on multiple occasions: counsel was present when petitioner signed his plea agreement; counsel was present at the Rule 11 hearing; and counsel was present at the sentencing hearing. Furthermore, when asked about counsel's effectiveness at

the Rule 11 hearing the following exchange took place:

> THE COURT: Have you discussed the case with your lawyer from the time you got the Indictment and a lawyer up until the present?
>
> MR. CASTO: Yes, sir.
>
> THE COURT: How many times would you say you and Mr. LeRose have actually gotten together or talked by telephone about your case?
>
> MR. CASTO: I think about three times, sir.
>
> THE COURT: During those occasions, were you able to ask any questions and was Mr. LeRose able to give you answers or advice concerning the case and these legal proceedings?
>
> MR. CASTO: Yes, sir.
>
> THE COURT: Is there anything that you asked Mr. LeRose to do for you that you feel he improperly refused to do?
>
> MR. CASTO: No, sir.
>
> THE COURT: Is there any question you asked Mr. LeRose which he was not able to or refused to answer?
>
> MR. CASTO: No, sir.
>
> THE COURT: Are you completely satisfied with the legal assistance, counseling, advice and actions your attorney has given you in this case?
>
> MR. CASTO: Yes, sir.

See Plea Hearing Transcript (dckt. 47) pp.16-17. Therefore, petitioner's complaint is not supported by the record and must fail.

### III. Recommendation

For the reasons set forth herein, the undersigned recommends that the Court enter an

Order **DENYING** the petitioner's § 2255 motion and **DISMISSING** this case with prejudice.

Within ten (10) days after being served with a copy of this Opinion/Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: June 18, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE